**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BILL SPURLOCK, ) <br> ) <br>       Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> SHUTTERFLY, INC., WILLIAM J. LANSING, ) <br> RYAN O'HARA, THOMAS D. HUGHES, EVA ) <br> MANOLIS, ANN MATHER, ELIZABETH S. ) <br> RAFAEL, ELIZABETH P. SARTAIN, HENRY ) <br> TAYLOE STANSBURY, BRIAN T. SWETTE, ) <br> and MICHAEL P. ZEISSER, ) <br> ) <br>       Defendants. ) | Case No. _____ <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Bill Spurlock, by his undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Shutterfly, Inc. ("Shutterfly" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Shutterfly, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Shutterfly by Photo Holdings, LLC ("Newco") and Photo Holdings Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Newco (collectively "Photo Holdings").

1

2.      Newco is an affiliate of the Apollo Funds, which are managed by affiliates of Apollo Global Management, LLC.

3.      On June 10, 2019, Shutterfly entered into an agreement and plan of merger (the "Merger Agreement") with Photo Holdings, pursuant to which Merger Sub will merge with and into Shutterfly, with Shutterfly continuing as the surviving corporation and wholly owned subsidiary of Newco (the "Proposed Transaction").

4.      Upon consummation of the merger, each share of Shutterfly common stock will be converted into the right to receive $51.00 in cash per share (the "Merger Consideration").

5.      On July 19, 2019, in order to convince Shutterfly public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.      In particular, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by Shutterfly's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") regarding the Proposed Transaction.

7.      The Proposed Transaction is expected to close early in the 4th quarter of this year and the special meeting of the Company's shareholders to vote on the Proposed Transaction will be scheduled in the coming weeks.  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting, so Plaintiff can properly exercise his corporate voting rights.

8.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Shutterfly's public common

shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Shutterfly's common stock trades on the Nasdaq Global Select Market ("NasdaqGS"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, Shutterfly's proxy solicitor, MacKenzie Partners, Inc. is located in this District at 1407 Broadway, New York, NY 10018. Moreover, any proceeding in connection with Shutterfly's Debt Financing is subject to the

exclusive jurisdiction of this District.

## PARTIES

12. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Shutterfly common stock.

13. Defendant Shutterfly is a public company incorporated under the laws of Delaware with principal executive offices located at 2800 Bridge Parkway, Redwood City, California 94065. Shutterfly's common stock is traded on the NasdaqGS under the ticker symbol "SFLY."

14. Defendant William J. Lansing is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15. Defendant Ryan O'Hara is a director of the Company and its President and Chief Executive Officer, effective June 24, 2019.

16. Defendant Thomas D. Hughes is, and has been at all relevant times, a director of the Company.

17. Defendant Eva Manolis is, and has been at all relevant times, a director of the Company.

18. Defendant Ann Mather is, and has been at all relevant times, a director of the Company.

19. Defendant Elizabeth S. Rafael is, and has been at all relevant times, a director of the Company.

20. Defendant Elizabeth P. Sartain is, and has been at all relevant times, a director of the Company.

21. Defendant Henry Tayloe Stansbury is, and has been at all relevant times, a director of the Company.

22. Defendant Brian T. Swette is, and has been at all relevant times, a director of the

Company.

23. Defendant Michael P. Zeisser is, and has been at all relevant times, a director of the Company.

24. The Defendants identified in paragraphs 14 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Shutterfly, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25. Shutterfly is an online manufacturer and retailer of personalized products and services. The Company focuses on helping consumers manage their memories through the medium of photography. Shutterfly provides a range of personalized photo-based products and services that enable consumers to upload, edit, organize, find, share, create, print, and preserve their memories in a thoughtful manner.

26. On June 10, 2019, the Board caused the Company to enter into the Merger Agreement with Photo Holdings. Pursuant to the terms of the Merger Agreement, Shutterfly shareholders will be entitled to receive $51.00 in cash for each share of Shutterfly common stock they own.

27. According to the June 10, 2019, press release announcing the Proposed Transaction:

> **Shutterfly, Inc. Agrees to be Acquired by Certain Funds Managed by Affiliates of Apollo Global Management in an All-Cash Transaction with an Enterprise Value of $2.7 Billion**
>
> *Shutterfly, Inc. stockholders to receive $51.00 per share in cash*
>
> Redwood City, CA – June 10, 2019 – Shutterfly, Inc. (Nasdaq: SFLY) ("Shutterfly" or the "Company"), a leading retailer and manufacturing platform dedicated to helping capture, preserve, and share life's important moments, today announced that it has entered into a definitive agreement with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all the outstanding shares of Shutterfly for $51.00 per share in cash, or enterprise value of approximately $2.7 billion.

5

The $51.00 per share cash consideration represents a premium of 31% when compared to Shutterfly's unaffected closing stock price of $38.91 on April 23, 2019, the last trading day before a media report was published speculating that Apollo Funds were considering a bid for the Company. The Shutterfly Board of Directors unanimously approved the agreement with the Apollo Funds and recommends that Shutterfly stockholders vote in favor of the transaction.

"Earlier this year, Shutterfly announced the formation of a Strategic Review Committee to continue the Board of Directors' ongoing review of strategic alternatives for the Company," said William Lansing, Shutterfly's Chairman of the Board. "We ran a broad and comprehensive process, engaging with a significant number of potential buyers, and are pleased that the process culminated in a transaction that maximizes value for Shutterfly stockholders. We look forward to working closely with Apollo as we continue to build a compelling service that enables deeper, more personal relationships for our customers, and to advance our digital and manufacturing capabilities to support sustainable growth."

"Shutterfly has cultivated a deep connection with customers through its three divisions, Shutterfly Consumer, Shutterfly Business Solutions and Lifetouch, each of which we view as exceptional platforms with leading positions in their respective segments," said David Sambur, Senior Partner at Apollo. "At a time when billions of photos are taken every day, Shutterfly has led the charge as a pioneer of personalized photo products and school photography, helping consumers capture, preserve and share life's most important moments. We are excited to work with Shutterfly's leadership and talented team of dedicated employees to grow each of the businesses and further enhance customer relationships across both Shutterfly and Lifetouch."

Lansing continued, "This transaction is a testament to our outstanding team of talented employees and the company they have built. What began as a digital photo printing company is now a large and diversified business that has successfully evolved with our customers. As we enter this exciting new chapter for Shutterfly, Apollo is an ideal strategic partner, as they will provide additional resources and industry knowledge while we continue to work on our important business initiatives."

In a separate press release issued today, Shutterfly announced the appointment of Ryan O'Hara as its President and Chief Executive Officer, effective June 24, 2019.

**Transaction Details**
The transaction is expected to close by early fourth quarter 2019. The transaction is subject to customary closing conditions, including approval by Shutterfly stockholders and receipt of clearance under the Hart-Scott-

> Rodino Antitrust Improvements Act of 1976.
> Upon completion of the transaction, Shutterfly will become a privately held company, and its shares will no longer be listed on the NASDAQ Global Select Market.
>
> **Advisors and Financing Providers**
> Morgan Stanley & Co. LLC is acting as financial advisor to Shutterfly, and Fenwick & West LLP is acting as its legal counsel.
>
> Financing is being provided by Barclays, Citi and SunTrust Robinson Humphrey, Inc. (or a lending affiliate), who are also serving as financial advisors to the Apollo Funds. LionTree, UBS Investment Bank and Evercore are also serving as financial advisors to the Apollo Funds. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to the Apollo Funds.

(Emphasis in original).

**The Proxy Omits Material Information**

28. On July 19, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The special meeting of Shutterfly stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

29. Specifically, the Proxy fails to provide enough information regarding the valuation analyses performed by Morgan Stanley regarding the Proposed Transaction.

30. With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy fails to disclose the number of estimated outstanding shares of the Company's common stock on a fully diluted basis as of June 9, 2019. Proxy at 47.

31. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy omits: (i) the basis for calculating the perpetual growth rates of 0% to 2% for the Management Case and

7

(1%) to 1% for the Management Sensitivity Case; (ii) the terminal values calculated for 2024; and (iii) the number of outstanding shares of Shutterfly's common stock on a fully diluted basis. *Id.* at 48-49.

  32. These key inputs are material to Shutterfly shareholders, and their omission renders the summary of Morgan Stanley's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Shutterfly's shareholders cannot evaluate for themselves the reliability of Morgan Stanley's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Morgan Stanley, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

33. Morgan Stanley's *Precedent Transactions Analysis* is also materially misleading. In particular, the Proxy fails to disclose the individual multiples observed for each of the selected precedent transactions. Proxy at 49.

34. With respect to Morgan Stanley's *Premiums Paid Analysis*, the Proxy omits the individual premiums observed in each of the precedent transactions. *Id.* at 50.

35. Last, with respect to the *Equity Research Analysts' Future Price Targets Analysis*, the Proxy fails to disclose the one-year forward price targets for Shutterfly's common stock utilized by Morgan Stanley and the sources thereof. *Id.* at 51. Further, while the Proxy provides the range of analyst price targets as of June 7, 2019, it fails to disclose the average analyst price target. *Id.*

36. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

9

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by Morgan Stanley in support of its fairness opinion.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted

information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Morgan Stanley reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Morgan Stanley, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Morgan Stanley's analyses in connection with their receipt of the fairness opinions, question Morgan Stanley as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

45. Shutterfly is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who

11

will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Shutterfly within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Shutterfly, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They

were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

cc

Dated: July 23, 2019            **Monteverde & Associates PC**

By:   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*